IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

DAVID DYLAN JOINER,            :

    Plaintiff,               :

vs.                            :     CA 15-0008-C

CAROLYN W. COLVIN,             :
Acting Commissioner of Social Security,
                                                                :

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 24 & 26 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of the parties at the September 23, 2015 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 24 & 26 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of (Continued)

Plaintiff alleges disability due to status-post right sided clavicle fracture, status-post right shoulder fracture, right toe fracture, right rib fracture, status-post left shoulder fracture, status-post cervical fusion, bilateral femur fractures, chronic pain, traumatic arthritis, and depression. The Administrative Law Judge (ALJ) made the following relevant findings:

> 1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.
>
> 2.     The claimant has not engaged in substantial gainful activity since June 1, 2009, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3.     The claimant has the following severe impairments: status post right sided clavicle fracture, right shoulder fracture, right toe fracture, and right rib fracture; status-post left shoulder fracture; and status post cervical fusion and bilateral femur fractures (20 CFR 404.1520(c) and 416.920(c)).
>
> The claimant is a 37-year-old male with a self-reported tenth grade (limited) education. A review of the documentary evidence establishes that his history is remarkable for several health and medical problems. Primarily, these include right sided clavicle fracture, right shoulder fracture, right toe fracture, right rib fracture, left shoulder fracture, cervical fusion, and bilateral femur fractures.
>
> The claimant's treatment records reflect that on June 25, 2005, he was hospitalized following a motorcycle accident. Those records confirm that he suffered several injuries, including right sided clavicle fracture, right shoulder fracture, right toe fracture, and right rib fracture. Those records also confirm a previous cervical fusion. The claimant was hospitalized for about ten days, did well, and was discharged.
>
> On February 8, 2009, the claimant was hospitalized for a left shoulder fracture/dislocation secondary to a fall. For this, he underwent reduction of the shoulder, which restored grossly normal anatomical position per x-ray results. He was restricted in activities for one day (the day of the procedure) and to "light to normal activity" the following day and thereafter. No other problems were endorsed.

---

Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

On April 23, 2009, in connection with his previous applications for disability, the claimant presented to Huey Kidd, D.O., for medical/vocational examination at the request of the State Agency Disability Determination Service (DDS). According to the doctor's report, the claimant reported that at the age of 18 he was working on a radio tower for cell phones, fell, and broke bilateral femurs, his neck, right arm, and several ribs. [Dr. Kidd found] no medical records [to] corroborate these allegations. Since that time, the claimant stated that he had continuous pain in his legs and in his right arm which, he shared, limited him in activities of running and swimming. On exam, the claimant was 75 inches tall and weighed 206 pounds. . . . There was no clubbing, cyanosis or edema. He had full range of motion and 5/5 strength in bilateral upper and lower extremities. He was able to heel walk, toe walk, and bend and touch his toes. He was able to squat and stand although he was holding on to the exam table in order to do so. Deep tendon reflexes were intact throughout, and he ambulated without any difficulty. X-ray of [the] lumbar spine was essentially normal with no osteoarthritic changes and preserved disk space. Based on the claimant's history and his own independent findings, Dr. Kidd opined that, from a vocational perspective, the claimant "would have difficulty maintaining any type of heavy labor; however, he should be able to work in some capacity that is not heavy labor related[.]"

On October 26, 2011, in connection with his current applications for disability, Stephen Robidoux, M.D., conducted a medical/vocational examination of the claimant at the request of the DDS. At that time, the claimant reported that he had not been seen by a treating doctor in four years, and that he was taking no medication. Vocationally, he reported last working in 2007 as a Bulldozer Operator on a contract job that ended in 2007. He also reported that he had not worked since that time. On exam, according to the doctor, the claimant had a normal examination for his age, and that he could find no limitations to sitting, standing, squatting, lifting, carrying, climbing, using hand and foot controls, handling objects, talking, listening, or travel. The doctor's report also indicated that the claimant had a driver's license and drove, and that he reported he also drove a motorcycle "every now and then[.]"

On November 26, 2012, the claimant was seen at Travis Clinic (Judy Travis, M.D.) in order to establish himself as a patient and obtain pain medication. The doctor referenced the claimant's medical history of multiple fractures as a result of a 1994 fall. On exam, the claimant's blood pressure was slightly elevated at 180/102, otherwise, examination was essentially unremarkable. The claimant was counseled on smoking cessation, and received prescribed pain medication with no refills.

On April 3, 2013, subsequent to the hearing, Dr. Travis completed a Medical Source Statement at the request of the claimant's attorney. Therein she reported that, at best, the claimant could perform no more

3

than a restricted range of light to medium type work activity for no more than five hours per day. In addition, she reported that the condition—worsening arthritis—had existed since June 2009, which is his amended alleged onset date of disability. The doctor also reported that the claimant[] suffer[s] from significant pain, that physical activity (walking, standing, etc.) exacerbate[s] pain to the extent that bed rest or medication was necessary, and that he would miss work more than three days per month due to impairments or treatment.

. . .

**5.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

. . .

**6.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is precluded from climbing ladders, ropes or scaffolds. He can frequently climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. He is precluded from operation or control of hazardous, moving machinery. He must avoid exposure to unprotected heights. He can sustain occasional exposure to extreme cold and excessive vibration.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical

evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

At the hearing, the claimant testified that on a regular day, he has to lie in bed for an hour or two before rising. He stated that after he gets up, he sometimes has to lie back down for a couple of hours due to hip pain and knee pain. He said he constantly has to move to ease the pain – no more than 15 minutes sitting at a time. He testified that he can lift 25 pounds on a good day, and that he has bad days where he cannot lift his arms. He estimated that that he can walk 25-50 yards on a good day. He said he sweeps, mops and takes the garbage out. He testified that he has 4-5 bad days in a week where he [is] unable to do any activities. He reported that he worked after he fell from the tower, but could no longer work due to his legs and shoulder[s]. On average, he rated his pain as 7 out of 10. He stated that his pain is rarely controlled by medication for more than 6 hours. He shared that he shops, maybe 10 minutes once a month. He said beer helps ease his pain, and he does not mix beer and pain medication. The claimant testified that he lived alone, but was helped out by his mother who owns the travel trailer where he lives. He said he also cut grass on a riding lawn mower, about 20-30 minutes at a time. He would like to work, but said he had trouble lifting his arms up.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements and other allegations concerning the intensity, persistence or limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

In terms of the claimant's alleged disability, the undersigned notes that he has no significant mental impairments or mental impairment caused limitation of function. Physically, his treatment records document that his broken bones healed well with the medical treatment he received. The only treatment record based restrictions from 2009 following the left shoulder fracture/dislocation where he was restricted in activities for only one day (the day of the procedure), and to "light to normal activity" the following day and thereafter. Since that time, physical examinations have been essentially unremarkable. Dr. Kidd reported that the claimant had full range of motion and 5/5 strength in the bilateral upper and lower extremities. He was able to heel walk, toe walk, and bend and touch his toes. He was able to squat and stand, and he ambulated without any difficulty. X-ray of [the] lumbar spine was essentially normal with no osteoarthritic changes and preserved disk spaces. When seen by Dr. Robidoux in October 2011, the claimant's examination was "normal" for his age, and the doctor found no limitations. He had full range of motion of his back and other joints, negative straight leg raising, normal gait, 4/4 deep tendon reflexes, normal fine and gross manipulation, and no muscle atrophy. When the claimant was examined by Dr. Travis in November 2012, the doctor reported that the claimant's pain was controlled, and that

5

physical examination revealed no deformities, good muscle mass bilaterally, full range of motion of all joints, and that all muscles were functioning well with no atrophy.

The claimant returned to work following his 1994 accident and, according to the report of Dr. Robidoux, worked after his 2005 motorcycle accident, until 2007 when the job was over. Treatment records do not document any deterioration in his physical status since that time. Dr. Kidd indicated that the claimant could do all but heavy labor type jobs. Dr. Robidoux reported that the claimant had no limitations, which is generally consistent with the examination notes provided most recently by Dr. Travis that reflect no limitations and controlled pain. Further, the claimant continues to ride a motorcycle.

As for the opinion evidence, the undersigned gives great weight to the opinions of Drs. Kidd and Robidoux. Their opinions are consistent with and supported by the weight of the evidence in this case, including the claimant's x-rays and treatment records.

The undersigned gives little weight to the opinion of Dr. Travis regarding the Medical Source Statement she completed subsequent to the hearing. The statement is inconsistent with the weight of the evidence, including her own treatment records of the claimant that reveal both that he has no significant problems and that his pain is under control with low dose pain medication.

In sum, the above residual functional capacity assessment is supported by treatment records, as well as the detailed reports of Drs. Kidd and Robidoux.

**7.   The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

.   .   .

**8.   The claimant was born on April 13, 1976, and is vocationally classified as a younger individual age 18-49 at all times relevant hereto (20 CFR 404.1563 and 416.963).**

**9.   The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**10.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills  (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

> **11.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 404.1568(d), 416.969, and 416.969(a)).**
>
> . . .
>
> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.18. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the undersigned asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. Dr. Kessler testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as: Inspector Tester, DOT # 529.687-114, unskilled/svp2, light, with 2,300 jobs in the regional (Alabama) economy and 130,200 jobs in the national (United States) economy; Cashier, DOT # 211.462-010, unskilled/svp2, light, with 19,300 jobs in the regional economy and 1,126,400 jobs in the national economy; and Assembler, DOT # 706.684-022, unskilled/svp2, light, with 6,200 jobs in the regional economy and 90,000 jobs in the national economy.
>
> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.
>
> Based on the persuasive testimony of the vocational expert, the undersigned concludes that considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.
>
> **12.    The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Tr. 16-18, 19, 19-21, 21-22 & 22 (internal citations and footnote omitted; emphasis in original).) The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

7

## **DISCUSSION**

In all Social Security cases, the claimant bears the burden of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors:  (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Once the claimant meets this burden, as here, it becomes the Commissioner's burden to prove that the claimant is capable, given his age, education and work history, of engaging in another kind of substantial gainful employment, which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that he can perform those light jobs identified by the vocational expert, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[2]

---

[2]   This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

In this case, the plaintiff contends that the following errors were committed in this case: (1) the ALJ erred in failing to assign substantial weight to the opinion of the treating physician, Dr. Judy Travis; (2) the ALJ failed to follow the Eleventh Circuit's pain standard; and (3) the ALJ's RFC assessment is not supported by substantial evidence because the ALJ ignored the impact of all of his impairments.

These arguments require the Court to set forth the proper analysis for consideration of RFC "issues" raised in cases like the instant one. Initially, the Court notes that the responsibility for making the residual functional capacity determination rests with the ALJ. *Compare* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.") *with, e.g., Packer v. Commissioner, Social Security Admin.*, 542 Fed. Appx. 890, 891-892 (11th Cir. Oct. 29, 2013)[3] (per curiam) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (internal citation omitted)). A plaintiff's RFC—which "includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressure[]"—"is a[n] [] assessment of what the

---

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Watkins v. Commissioner of Social Security,* 457 Fed. Appx. 868, 870 n.5 (11th Cir. Feb. 9, 2012), citing 20 C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c). Here, the ALJ's RFC assessment consisted of the following: "**After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is precluded from climbing ladders, ropes or scaffolds. He can frequently climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. He is precluded from operation or control of hazardous, moving machinery. He must avoid exposure to unprotected heights. He can sustain occasional exposure to extreme cold and excessive vibration.**" (Tr. 19 (emphasis in original).)

To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has "'provide[d] a sufficient rationale to link'" substantial record evidence "'to the legal conclusions reached.'" *Ricks v. Astrue*, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)); *compare id. with Packer v. Astrue*, 2013 WL 593497, *4 (S.D.Ala. Feb. 14, 2013) ("'[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.'"), *aff'd,* 542 Fed. Appx. 890 (11th Cir. Oct. 29, 2013)[4]; *see also Hanna v. Astrue*, 395 Fed. Appx. 634, 636 (11th Cir. Sept. 9, 2010) (per curiam) ("The ALJ

---

[4] In affirming the ALJ, the Eleventh Circuit rejected Packer's substantial evidence argument, noting, she "failed to establish that her RFC assessment was not supported by substantial evidence[]" in light of the ALJ's consideration of her credibility and the medical evidence. *Id.* at 892.

must state the grounds for his decision with clarity to enable us to conduct meaningful review. . . . Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)).[5] However, in order to find the ALJ's RFC assessment supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician. *See, e.g., Packer, supra*, 2013 WL 593497, at *3 ("[N]umerous court have upheld ALJs' RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician."); *McMillian v. Astrue*, 2012 WL 1565624, *4 n.5 (S.D. Ala. May 1, 2012) (noting that decisions of this Court "in which a matter is remanded to the Commissioner because the ALJ's RFC determination was not supported by substantial and tangible evidence still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that substantial and tangible evidence must—in all cases—include an RFC or PCE from a

---

[5] It is the ALJ's (or, in some cases, the Appeals Council's) responsibility, not the responsibility of the Commissioner's counsel on appeal to this Court, to "state with clarity" the grounds for an RFC determination. Stated differently, "linkage" may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the Commissioner's decision. *See, e.g., Durham v. Astrue*, 2010 WL 3825617, *3 (M.D. Ala. Sept. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'" (quoting *Hanna*, 395 Fed. Appx. at 636 (internal quotation marks omitted))); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ *could have* relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support. Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct." (emphasis in original)); *Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave.").

physician" (internal punctuation altered and citation omitted)); *but cf. Coleman v. Barnhart*, 264 F.Supp.2d 1007 (S.D. Ala. 2003). The linkage requirement is simply another way to say that, in order for this Court to find that an RFC determination is supported by substantial evidence, ALJs must "show their work" or, said somewhat differently, show *how* they applied and analyzed the evidence to determine a plaintiff's RFC. *See, e.g., Hanna, supra*, 395 Fed. Appx. at 636 (an ALJ's "decision [must] provide a meaningful basis upon which we can review [a plaintiff's] case"); *Ricks*, 2012 WL 1020428, at *9 (an ALJ must "explain the basis for his decision"); *Packer*, 542 Fed.Appx. at 891-892 (an ALJ must "provide *enough reasoning* for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole[]" (emphasis added)).

In this case, the Court finds that the ALJ did not completely link his RFC assessment—that is, a limited range of unskilled light work—to specific evidence in the record bearing upon Joiner's ability to perform the physical, mental, sensory and other requirements of work because he failed to set forth his reasons for finding that "claimant's statements and other allegations concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible" (Tr. 20), as more precisely set out hereinafter.

The Eleventh Circuit has consistently and often set forth the criteria for establishing disability based on testimony about pain and other symptoms. *See, e.g., Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

> [T]he claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. If the ALJ discredits subjective testimony,

> he must articulate explicit and adequate reasons for doing so. Failure to articulate reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.

*Wilson, supra,* 284 F.3d at 1225 (internal citations omitted; footnote added).

"20 C.F.R. § 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms *must* be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (emphasis supplied). In other words, once the issue becomes one of credibility and, as set forth in SSR 96-7p, in recognition of the fact that a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by objective medical evidence alone, the adjudicator (ALJ) in assessing credibility must consider in addition to the objective medical evidence the other factors/evidence set forth in 20 C.F.R. §§ 404.1529(c) and 416.929(c). More specifically, "[w]hen evaluating a claimant's subjective symptoms, the ALJ *must* consider the following factors: (i) the claimant's 'daily activities; (ii) the location, duration, frequency, and intensity of the [claimant's] pain or other symptoms; (iii) [p]recipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the [claimant took] to alleviate pain or other symptoms; (v) treatment, other than medication, [the claimant] received for relief . . . of pain or other symptoms; and (vi) any measures the claimant personally used to relieve pain or other symptoms.'" *Leiter v. Commissioner of Social Security Administration*, 377 Fed.Appx. 944, 947 (11th Cir. May 6, 2010) (emphasis supplied), quoting 20 C.F.R. §§ 404.1529(c)(3); *see also* SSR 96-7p ("In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence . . . that the adjudicator *must*

13

consider in addition to the objective medical evidence when assessing the credibility of an individual's statements[.]" (emphasis supplied)).

In this case, the ALJ clearly recognized that plaintiff's impairments meet the pain standard (*see* Tr. 20 ("[T]he undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms[.]")) yet found that his subjective complaints were not entirely credible (*id.* ("[T]he claimant's statements and other allegations concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible[.]")).[6] However, the ALJ, in making his credibility finding, *see Foote, supra,* at 1561, considered only the objective medical evidence of record[7] but did not consider the other factors/evidence set forth in 20 C.F.R. §§ 404.1529(c) and 416.929(c) (*see* Tr. 20-21). This was error. In other words, in this decidedly "pain" case,[8] *Foote, supra,* at 1562 ("'[W]here proof of a disability is based upon subjective evidence and a credibility determination is, therefore, a critical factor in the [Commissioner]'s decision, the ALJ must either

---

[6] This type of conclusory analysis is simply not useful in a pain case. In other words, if district courts allow such analysis to suffice, there would be no reason for ALJs to account for the "other factors" set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). Indeed, sanctioning such approach would effectively allow ALJs to reject a claimant's testimony of pain (and other symptoms) without articulating "*explicit* and *adequate* reasons for doing so." *See Wilson, supra,* 284 F.3d at 1225 (emphasis supplied).

[7] This Court finds curious the ALJ's failure to include in his analysis any mention of numerous office visits made by plaintiff to Dr. Travis (*see* Tr. 309-311 & 315-323) or the objective findings made by Travis supportive of Joiner's pain complaints (*compare* Tr. 310 ("DECREASED LORDOTIC CURVE AND ROM. 4++++MUSCLE SPASMS[.] OTHERWISE, LEFT KNEE AND BOTH SHOULDERS HAVE PAIN AND DECREASED ROM.") *with* Tr. 313 (same findings made)).

[8] (*Compare, e.g.,* Tr. 249 ("He will be in chronic pain.") *with* Tr. 296 ("Chronic pain.") and Tr. 309 ("Chronic Pain.").) Although the ALJ indicated he was according "great weight" to Dr. Kidd's opinion (Tr. 21), the Court does not find that the hearing officer mentions anywhere in his decision that Dr. Kidd specifically determined that plaintiff would "be in chronic pain." (Tr. 249.) This "opinion" articulated by Dr. Kidd certainly does nothing to undermine plaintiff's pain testimony and/or credibility. In fact, it does just the opposite.

explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.'"), the ALJ's adverse credibility determination is not supported by substantial evidence because he failed to utilize any of the many reasons at his disposal for finding Joiner's testimony not fully credible, including daily activities, *see Wheeler v.* Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986) (noting activities such as caring for personal needs, visiting a sick aunt, helping his spouse around the house, and carrying out the garbage supported the ALJ's finding that the claimant did not suffer disabling pain),[9] sporadic use of narcotic pain medication, *see Davis v.* Astrue, 2011 WL 3875620, *8 (M.D. Ala. Aug. 31, 2011) ("The court finds the ALJ's decision to discount plaintiff's testimony to be minimally adequate. He stated at least one specific reason—*i.e.*, that plaintiff's 'use of medication does not suggest the presence of any impairment(s) which is more limiting than found in this decision.' The ALJ's failure to cite the evidence in support of this stated reason within his credibility analysis is not the best practice, and it needlessly complicates review. However, it is apparent from the decision as a whole that the ALJ here refers to plaintiff's sporadic use of narcotic pain medication, described fully within the ALJ's summary of the evidence and supported by evidence of record. Accordingly, the court finds without merit plaintiff's contention that the ALJ's credibility determination is flawed as to his testimony of disabling pain." (internal citations and footnote omitted)),[10] and the like.[11]

---

[9] Although the ALJ mentioned some activities plaintiff engages in during the course of the recounting/summarization of his hearing testimony (*see* Tr. 20), the hearing officer nowhere indicates that the activities about which plaintiff testified are indicative of the fact that plaintiff does not suffer from disabling pain (*see id.* at 20 & 21).

[10] The undersigned does not mean to suggest that Joiner uses his pain medication sporadically as there is no indication that he does anything other than take the medication, in particular, Oxycodone, as prescribed. Oxycodone "is indicated for relief of moderate to severe pain." https://en.wikipedia.org/wiki/Oxycodone (last visited September 21, 2015, 3:16 p.m.).

Because the ALJ's credibility determination is flawed, this Court is unable to find that the ALJ provided the linkage necessary to substantiate his RFC determination.[12] Accordingly, this cause is due to be remanded to the Commissioner of Social Security for further proceedings not inconsistent with this decision.

## CONCLUSION

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for

---

[11] Such credibility determination should take the shape of that noted in *Leiter, supra*, 377 Fed. Appx. at 948 (daily activities), or *Witherspoon v. Astrue*, CA 12-0220-C, Doc. 21, at 7-9 (no pain medication, etc.). The need to perform such analysis is particularly apparent where, as here, the vocational expert testified that an individual limited in the manner plaintiff alleged secondary to musculoskeletal pain could perform no work in the national economy. (*Compare* Tr. 53 *with* Tr. 38-41.)

[12] While the ALJ never once references the RFC determination of the state agency Single Decision Maker, Shekitha Sanders (*compare* Tr. 14-23 *with* Tr. 260-267), it appears that all "limitations" on light work noted in the ALJ's RFC assessment (Tr. 19 ("**[H]e is precluded from climbing ladders, ropes or scaffolds. He can frequently climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. He is precluded from operation or control of hazardous, moving machinery. He must avoid exposure to unprotected heights. He can sustain occasional exposure to extreme cold and excessive vibration.**")) all but "track" the RFC assessment of Sanders (*compare id. with* Tr. 262 & 264). Sanders, of course, is not an acceptable medical source, *see Siverio v. Commissioner of Social Security*, 461 Fed.Appx. 869, 871-872 (11th Cir. Feb. 23, 2012) (per curiam) and because her opinion is entitled to no weight, *compare id.* at 871 ("'SDM-completed forms are not opinion evidence at the appeals level.'") *with Brown v. Astrue,* 2012 WL 920973 (M.D. Fla. Mar. 19, 2012) (finding that an RFC assessment completed by an SDM with no apparent medical credentials is not an opinion of an acceptable medical source and is not entitled to any weight) and *Hall v. Astrue,* 2012 WL 2499177, *2-3 (N.D. Ala. Jun. 22, 2012) (finding ALJ erred in "affording any weight, even minimal weight," to the assessment of the SDM), the ALJ's obvious "ghost reference" to Sanders' assessment does not provide the necessary linkage between the ALJ's RFC assessment and specific evidence in the record bearing upon the plaintiff's ability to perform the physical, mental, sensory, or other requirements of work.

purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

    **DONE** and **ORDERED** this the 24th day of September, 2015.

                  s/WILLIAM E. CASSADY
                   **UNITED STATES MAGISTRATE JUDGE**